UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTINA M. VEST obo Estate
of Timothy C. Hoffman,

      Plaintiff,

v.                       Case No: 2:21-cv-896-JES-DAB

KNAUF GIPS KG, KNAUF
PLASTERBOARD TIANJIN CO.
LTD., and KNAUF NEW BUILDING
SYSTEM (TIANJIN) CO. LTD.,

      Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on defendants' Motion to
Exclude or Limit the Expert Testimony of Howard Ehrsam and Shawn
Macomber (Doc. #64) filed on February 9, 2024. Plaintiff filed
an Opposition (Doc. #65) on February 13, 2024.

**I.**

"[F]ederal courts sitting in diversity apply state
substantive law and federal procedural law." Gasperini v. Ctr. for
Humanities, Inc., 518 U.S. 415, 427 (1996). The Court applies
federal law to determine the admissibility of expert testimony.
Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1193
(11th Cir. 2010). Admission of expert opinion evidence is
governed by Fed. R. Evid. 702, which provides:

> A witness who is qualified as an expert by
> knowledge, skill, experience, training, or

education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702 (eff. Dec. 1, 2023).  In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) and Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993), the Supreme Court held that the trial court has a "gatekeeper" function designed to ensure that any and all expert testimony is both relevant and reliable.  The importance of this gatekeeping function "cannot be overstated."  United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*).

In determining the admissibility of expert testimony under Rule 702, the Court applies a "rigorous" three-part inquiry. Frazier, 387 F.3d at 1260. "Expert testimony is admissible if (1) the expert is qualified to testify on the topic at issue, (2) the methodology used by the expert is sufficiently reliable, and (3) the testimony will assist the trier of fact." Club Car, Inc. v. Club Car (Quebec) Imp., Inc., 362 F.3d 775, 780 (11th Cir. 2004),

abrogated on other grounds by <u>Diamond Crystal Brands, Inc. v. Food</u>
<u>Movers Int'l, Inc.</u>, 593 F.3d 1249, 1258 n.7 (11th Cir. 2010).  In
short, "the expert must be qualified; his methodology must be
reliable; and his testimony must be helpful to the trier of fact."
<u>Doe v. Rollins Coll.</u>, 77 F.4th 1340, 1347 (11th Cir. 2023).  "The
proponent of the expert testimony bears the burden of establishing
each requirement by a preponderance of the evidence. . . ."  <u>Id.</u>

　　　"Even expert testimony which satisfies these three
requirements, however, may nonetheless be excluded under Rule 403
if the probative value of the expert testimony is substantially
outweighed by its potential to confuse or mislead the jury, or if
it is cumulative or needlessly time consuming." <u>Frazier</u> at 1263.
The admission of expert testimony is a matter within the discretion
of the trial court.  <u>Cook ex rel. Est. of Tessier v. Sheriff of</u>
<u>Monroe Cnty., Fla.</u>, 402 F.3d 1092, 1103 (11th Cir. 2005); <u>Frazier</u>,
387 F.3d at 1258.

## II.

### A. Factual Overview

　　　According to the Joint Final Pre-Trial Statement (Doc. #67),
plaintiff Christina M. Vest filed her claims on behalf of the
Estate of Timothy C. Hoffman (plaintiff or Vest).  Mr. Hoffman
purchased the property at 624 Northeast 2nd Place, Cape Coral,
Florida 33909 (the Property) "as is" on April 14, 2005.  (<u>Id.</u> at
15.)  Vest sues Defendants on strict liability and negligence

claims based on the presence of the Chinese drywall in the Property.  (Id. at 4.)

**B. Howard Ehrsam**

Defendants argue that Mr. Ehrsam's opinions are "unreliable, speculative, and otherwise unhelpful to the trier of fact."  (Doc. #64, p. 7.)  Plaintiff responds that objections to the factual foundation of the opinion go to credibility not admissibility, and that the corrosion caused by defective drywall is relevant and probative for a jury considering damages.  Because the substance of his generic opinions is the subject of stipulations, and Mr. Ehrsam has no opinions specific to this plaintiff (or Mr. Hoffman) or property, the motion will be granted.

Mr. Ehrsam has a B.A. in Civil Engineering, a Professional Engineer license, and is a Certified General Contractor.  Based on his own personal experience with Chinese drywall, Mr. Ehrsam created Chinese Drywall Screening, LLC in 2009.  Over the next 11 years, Mr. Ehrsam and his team completed more than 3,000 assessments for corrosive and/or Chinese drywall.  Mr. Ehrsam was retained to provide "generic expert opinions" "based on overall experience inspecting properties with KPT drywall."  (Doc. #64-2, p. 6.)  Mr. Ehrsam did not perform an individualized inspection of plaintiff's property.  Mr. Ehrsam's generic opinion was that uppercase KPT drywall has a tendency to emit gases and can cause corrosion and/or damage to component parts in homes.

Mr. Ehrsam testified in deposition that he was opining as to the generic effects of KPT drywall on property in general, not any particular property.  Mr. Ehrsam could not say with any scientific degree of certainty whether any personal property in individual homes was affected by Chinese drywall unless he inspected the homes personally, which he had not done.  Mr. Ehrsam stated that he was not providing any individual causation opinions with respect to individual properties that had KPT drywall; he was not offering any opinions as to any individual damages due to the presence of uppercase KPT drywall; he was not offering any opinions as to whether any individual plaintiff sustained health effects due to the presence of KPT Chinese drywall; he was not offering any opinions as to whether any particular individual sustained damages in the form of a short sale or bankruptcy; and was not providing any opinions with respect to whether any individual sustained any diminution in value due to the alleged presence of uppercase KPT drywall.  (Doc. #64-1 at 20, 21-22, 23-25.)

Defendants stipulate that: "Uppercase KPT drywall can, under some environmental conditions, and for some amount of time, emit reduced sulfur gases"; "KPT used gypsum to manufacture its uppercase KPT drywall boards"; "The sulfur cases that can emit from the uppercase KPT drywall stemmed from the raw material (i.e., gypsum) used to manufacture the drywall boards"; and "The condition of uppercase KPT drywall (*i.e.*, the fact that it can, under some

environmental conditions, and for some amount of time, emit reduced sulfur gasses) existed at the time it left KPT's control."  (Doc. #67, p. 14, 16.)  Mr. Ehrsam's testimony would go no further than the general stipulations.

As discussed below, any general opinion on damages would be excluded by the economic loss rule.  Additionally, the probative value of the generalized testimony is substantially outweighed by its potential to confuse or mislead the jury.  The motion will be granted, and Mr. Ehrsam will not be permitted to testify as an expert witness.

**C. Shawn Macomber**

Mr. Macomber has a master's degree in construction management, is certified as a Defective Drywall Consultant and Remediator, and has completed all training to be an independent insurance adjuster.  Mr. Macomber has performed Chinese drywall inspections since 2009 and has participated as an expert witness in Chinese drywall cases.  Mr. Macomber's qualifications as an expert witness are not being challenged.

Mr. Macomber was retained to provide opinions on Chinese drywall litigation, including: (1) The under-air and gross square footage for the affected property; (2) The presence of defective Knauf-manufactured drywall in the living space of the property; (3) The meaning of "complete remediation of the home"; (4) The projected cost of remediation of the Property utilizing the R.S.

Means methodology/formula approved by MDL-2047; and (5) The projected cost of remediation of the Property utilizing Xactimate. (Doc. #64-3 at 5-6.)  Mr. Macomber did inspect the Property and found reactive drywall in the living room to den.  (Doc. #64-5.)

Defendants argue that Mr. Macomber's opinions fail the second and third prongs of the expert witness standard because his opinions "are speculative, unreliable as to causation, and otherwise unhelpful." (Doc. #64, p. 16.)  This is so, Defendants argue, because the Florida economic loss rule precludes MCF Enterprises' recovery in tort of all (or at least most) of the damages it seeks, making Mr. Macomber's opinions on such precluded matters neither relevant nor helpful to the trier of fact.  (Id. at 16-20.)  Defendants also argue that Mr. Macomber's inspection and damage opinions are speculative and unreliable because he failed to identify the presence or the extent of KPT drywall in the Property, precluding a reliable determination of damages. (Id. at 20-24.)  The Court discusses each argument in turn.

**(1)  Economic Loss Rule**

Defendants argue that the Florida economic loss rule precludes Vest's recovery in tort of most, if not all, of the damages it seeks, thus making Mr. Macomber's opinions on such precluded matters neither relevant nor helpful.  Plaintiff responds that Mr. Macomber's opinions are not barred by the Florida economic loss rule, and that Defendants' argument is itself

precluded by prior rulings by the district judge handling MDL-2047 prior to its transfer back to the Middle District of Florida. (Doc. #70.)

    **(a)  Florida Economic Loss Rule**

The Florida Supreme Court adopted a products liability economic loss rule in 1987. <u>Florida Power & Light Co. v. Westinghouse Elec. Corp.</u>, 510 So. 2d 899 (Fla. 1987). "[T]he economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." <u>Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.</u>, 110 So. 3d 399, 401 (Fla. 2013) (citing <u>Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.</u>, 891 So. 2d 532, 536 (Fla. 2004)). The economic loss rule "was introduced to address attempts to apply tort remedies to traditional contract law damages" and was "the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." <u>Casa Clara Condominium Ass'n, Inc. v. Charley Toppino and Sons, Inc.</u>, 620 So. 2d 1244, 1246 (Fla. 1993). In 2013, the Florida Supreme Court re-affirmed its economic loss rule but confined it to products liability cases, receding from its prior expansion of the rule. <u>Tiara Condo.</u>, 110 So. 3d at 407 ("[W]e . . . hold that the economic loss rule applies

only in the products liability context. We thus recede from our prior rulings to the extent that they have applied the economic loss rule to cases other than products liability.")

The "economic losses" which may not be pursued in a tort claim are defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits," and include "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." Casa Clara, 620 So. 2d at 1246 (citation omitted). These "disappointed economic expectations" are protected by contract law, rather than tort law. Id. On the other hand, a claim for personal injury or damage to "other property" is not barred by the economic loss rule. Id. As the Eleventh Circuit summarized:

> The economic loss rule prohibits tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself. [] Economic loss includes damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property. [] The rationale underlying the economic loss rule is that parties should protect against the risk of economic loss during contract negotiations through warranty provisions and price adjustments rather than attempt to recover under tort law after the loss occurs.

Pulte Home Corp. v. Osmose Wood Preserving, Inc., 60 F.3d 734,
739-40 (11th Cir. 1995) (internal quotation marks and citations
omitted).

In cases where the economic loss rule applies, the Court must
distinguish between damages to the defective product itself
(recovery for which is barred in tort) and damages to "other
property" (recovery for which is permitted in tort).[1]  Id. at 741.

In Casa Clara, the Florida Supreme Court held that the
economic loss rule barred homeowners' negligence claims against a
subcontractor who supplied faulty concrete used in their homes.
The Supreme Court rejected the homeowners' assertion that "other
property" damage had occurred when steel reinforcement rods rusted
due to the unusually high salt content of the concrete.  Casa
Clara, 670 So. 2d at 1247.  The Court explained: "The character
of a loss determines the appropriate remedies, and, to determine
the character of a loss, one must look to the product purchased by
the plaintiff, not the product sold by the defendant."  Id. (citing
King v. Hilton-Davis, 855 F.2d 1047 (3d Cir. 1988)).  Because the
concrete was "an integral part of the finished product" —the house
the buyers had bargained for— the "other property" exception did
not apply. (Id.)

---

[1] There is no suggestion that any individual has been
physically injured as a result of the Chinese drywall in the
Property, so the Court need not discuss that aspect of the economic
loss rule.

In Pulte Home Corp., Pulte asserted a negligence claim against a defendant who sold it treated plywood which could not be used in attic environments. Pulte asserted that if it had been warned that the treated plywood was inferior in quality and would not work for the general purposes for which it was manufactured and sold, Pulte would not have bought the product. The Eleventh Circuit found that Pulte's negligence claim presented precisely the type of "disappointed economic expectation" claim that Florida's strict interpretation of the economic loss rule foreclosed. Pulte Home Corp., 60 F.3d at 741.

The Eleventh Circuit then discussed whether Pulte had established that its case fell within the "other property" exception to the economic loss rule by showing damage to property aside from the plywood. The facts established that:

> Pulte incorporated the FRT plywood into its townhouses, such that the deterioration of the plywood destroyed the structural integrity of the roof. As a result, Pulte was forced to remove and replace the FRT plywood. In doing so, Pulte also had to remove and replace other portions of the roof, including untreated plywood and shingles. These other roof components form the basis of Pulte's "other property" argument.

Id. The Eleventh Circuit found that Pulte had not established that there was damage to "other property."

> Under the Casa Clara definition, the product bargained for and purchased by Pulte was the Osmose-treated FRT plywood. Based on the evidence offered at trial, the FRT plywood

> itself was the only property damaged. Although
> Pulte did replace roof components other than
> the FRT plywood, these components were not
> replaced because they were damaged. Rather,
> replacing the shingles and other materials was
> merely a consequence of replacing the damaged
> FRT plywood. Casa Clara specifically stated
> that economic loss includes the costs of
> replacing the defective product. [] These
> costs simply do not trigger the other property
> exception. As such, the other property damage
> Pulte complains of is nothing more than pure
> economic loss for which Pulte cannot recover
> in tort.

Id. at 742 (internal citation omitted).

More recently, in 2711 Hollywood Beach Condo. Ass'n, Inc. v. TRG Holiday, Ltd., 307 So. 3d 869, 870 (Fla. 3d DCA 2020), a condominium association purchased the condominium building from the developer. The building included a fire suppression system (FSS) which had been installed during construction. The association noticed leaks in the system and filed suit seeking damages for future repairs and replacement of the system.  A defendant moved for partial summary judgment on the association's negligence and strict liability claims based on the economic loss rule, relying on Casa Clara.  Summary judgment was granted, and plaintiff appealed.

The Florida appellate court affirmed, stating:

> In Casa Clara, the Florida Supreme Court held
> that to the extent a products liability claim
> arises in the context of real estate, the
> economic loss rule applies. 620 So. 2d at
> 1247–48. The court applied the "object of the
> bargain" rule—in order "to determine the

character of a loss, one must look to the product purchased by the plaintiff, not the product sold by the defendant." Id. at 1247 (citing King v. Hilton-Davis, 855 F.2d 1047 (3d Cir. 1988)). The allegedly defective material in Casa Clara, the concrete, was an "integral part of the finished product," and, as such, the injury it caused was not considered damage to "other" property. Id.

The Association bargained for, purchased and received a building; Nibco's fittings were only a component of the FSS, incorporated into the building. Applying the rule set forth in Casa Clara, the Association purchased a completed building from the developer. Nibco's fittings were "an integral part of the finished product and, thus, did not injure 'other' property." Id.; see also Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875, 883, 117 S. Ct. 1783, 138 L. Ed. 2d 76 (1997) (stating that parts and fittings that become integral components of something else "constitute a single product for purposes of the economic loss doctrine" because "all but the very simplest machines have component parts" and any other holding "would require a finding of 'property damage' in virtually every case where a product damages itself." (quoting Va. Sur. Co. v. Am. Eurocopter Corp., 955 F. Supp. 1213, 1216 (D. Haw. 1996); E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 867, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986)). Injury to the building itself is not injury to "other" property because the product purchased by the Association was the building. See Casa Clara, 620 So. 2d at 1247. The economic loss rule therefore bars the Association's recovery as to Nibco to the extent that it sought damages to replace the FSS and repair damage to the building.

On appeal, the Association again concedes that Casa Clara is good law but argues that this Court should refrain from applying it here for policy reasons. We decline that invitation. In

> the over thirty years the economic loss rule
> has been applied by Florida courts, the
> Florida Supreme Court has carved out several
> exceptions. This case, however, falls squarely
> within the parameters of the rule.

2711 Hollywood Beach Condo. Ass'n, Inc., 307 So. 3d at 870-71.

**(b)  Application of Economic Loss Rule**

Here, it is undisputed that Plaintiff purchased a home in which a prior owner had previously installed Chinese drywall.  The product purchased by Mr. Hoffman was the home, and the drywall had been an integral part of the home for some time.  As in 2711 Hollywood Beach Condo. Ass'n, Inc. and Casa Clara, injury to the home is not injury to "other property" because the product purchased by Plaintiff was the home.  2711 Hollywood Beach Condo. Ass'n, Inc., 307 So. 3d at 870-71; Casa Clara, 620 So. 2d at 1247. Therefore, Plaintiff cannot pursue the economic damages it seeks. Id.

Most of the damages Plaintiff seeks qualify as economic damages which are not recoverable in product liability tort claims. Of these, only damages to "other property within the real property" are recoverable.  Plaintiff also seeks damages for the loss of use and enjoyment of the property."  (Doc. #67, p. 3.)  Of these, only damages to personal property may be recoverable.  Therefore, most of the damages which Plaintiff seeks are precluded by the economic loss rule, and Mr. Macomber will not be permitted to offer an opinion concerning such precluded damages.  Mr. Macomber may,

however, offer an opinion as to damages to "other property" if such damages exist.

**(c)   Prior MDL Opinions**

Plaintiff argues that the Court is forbidden from making this determination because it is inconsistent with a 2010 decision by the MDL-2047 district judge which denied motions to dismiss based on the Florida economic loss rule.  According to Plaintiff, this prior decision is the "law of the case" which cannot now be changed by a transferor district court. (Doc. #65, pp. 6-10.)  The Court concludes that the prior decisions are not the "law of the case" as to the trial evidentiary issues now before the Court.

In re Chinese Manufactured Drywall Products Liab. Litig., 680 F. Supp. 2d 780 (E.D. La. 2010), involved motions to dismiss tort claims of plaintiffs who purchased homes already containing Chinese drywall.  Id. at 785, 791.  The motions to dismiss argued that the Florida economic loss rule limited tort recovery in such circumstances to personal injury and/or damage to "other property," but barred any recovery for economic damages such as injury to the product, repair costs, inspection costs, relocation costs, and diminution in value.

The MDL Judge refused to dismiss the claims, holding that the Florida economic loss rule did not bar tort claims by plaintiffs who had purchased a home already containing Chinese drywall.  The MDL Judge recognized that Casa Clara Condo. Ass'n, Inc. v. Charley

Toppino & Sons, Inc., 620 So. 2d 1244, 1247 (Fla. 1993) had concluded that when homeowners purchase finished homes already containing a defective product, the finished homes constituted the "product." Id., 680 F. Supp. 2d at 791. The MDL Judge engaged in a lengthy discussion of the history of the economic loss rule, including Pulte Home Corp. v. Osmose Wood Preserving, Inc., 60 F.3d 734, 741–42 (11th Cir. 1995). Id. at 794-95. The MDL Judge distinguished these Florida cases, however, holding that they involved *structurally* inferior components, while the Chinese drywall was not structurally inferior and had not failed to serve its intended structural purpose. Instead, "its defects go beyond disappointed economic expectations, causing harm which justifies access to tort remedies." Id. at 793. The MDL Judge also found the drywall "involves a potential hazard to health and property" and plaintiffs had "alleged actual physical injury as a result of the Chinese drywall in their homes, thus the rationale in Casa Clara is not applicable." Id. The Court was also concerned that Casa Clara was a 4-3 decision with strong dissents, and later Florida Supreme Court decisions "have cast doubts on" it. Id. at 793-94.

Plaintiff argues that the discussion of the Florida economic loss rule is the law of the case which must be followed in all subsequent stages of the case. The Court disagrees.

The typical formulation of the law of the case doctrine provides:

> A decision of a legal issue or issues by an appellate court must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless (1) the evidence on a subsequent trial as substantially different, (2) controlling authority has since made a contrary decision of the law applicable to such issues, or (3) the decision was clearly erroneous and would work a manifest injustice.

Baumer v. United States, 685 F.2d 1318, 1320 (11th Cir. 1982) (quoting White v. Murtha, 377 F.2d 428, 431-32 (5th Cir. 1967)). See also Cambridge Univ. Press v. Albert, 906 F.3d 1290, 1299 (11th Cir. 2018) (findings and fact and conclusions by an appellate court are generally binding in all subsequent proceedings in the same case); United States v. Williams, 728 F.2d 1402, 1405-06 (11th Cir. 1984) (citing Baumer). "The doctrine is based upon the sound policy that litigation should come to an end. It protects against the agitation of settled issues and assures obedience of lower courts to the decisions of appellate courts." Williams, 728 F.2d at 1406 (citation omitted). Here, of course, there is no appellate decision at issue, so the normal law of the case doctrine simply does not apply.

The Eleventh Circuit has discussed the concept, however, in the context of trial-level decisions.

> At the trial court level, the doctrine of the law of the case has been described as "little

- 17 -

> more than a management practice to permit
> logical progression toward judgment." [] It is
> recognized that when cases are transferred
> from one judge to another judge in the same
> court, the transfer should not be treated as
> an opportunity to relitigate all the questions
> decided by the first judge. [] However, the
> subsequent judge should never be bound by an
> erroneous ruling of law.

Williams, 728 F.2d at 1406 (internal citations omitted). These principles do not bar the Court from following the Florida economic loss rule at trial in the manner set forth above.

At least one circuit, however, has applied the law of the case doctrine in the context of an MDL proceeding. In re Ford Motor Co., 591 F.3d 406, 411 (5th Cir. 2009) ("The better view is . . . that transferor courts should use the law of the case doctrine to determine whether to revisit a transferee court's decision.") "The law of the case doctrine requires that courts not revisit the determinations of an earlier court unless "(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work . . . manifest injustice." Id. at 411-12.

Even assuming the law of the case doctrine articulated in In Re Ford Motor Co. applies, it is not being violated here. The Court is not re-addressing the motions to dismiss decided by the MDL Judge. Rather, the Court is addressing new issues of how the Florida economic loss rule impacts the admissibility of evidence

at trial and expert opinion testimony at trial.  Furthermore, the
MDL Judge relied on the allegation there was personal injury, but
there is no such assertion in this case.  While the Court's
analysis of the impact of Florida case law differs from the MDL
Judge, the more recent Florida decision in 2711 Hollywood Beach
Condo. Ass'n, Inc. confirms that Casa Clara remains good law, that
the structural-soundness distinction does not make a difference,
and that concerns about the continued viability of Casa Clara in
the products liability context were not borne out.

Plaintiff also argues that the law of the case includes the
Findings of Fact & Conclusions of Law Related to The June 9, 2015
Damages Hearing (Doc. #65-1) in MDL-2047.  (Doc. #65, p. 7.)  Some
MDL defendants were in default and the MDL Judge had already
entered a liability judgment, so the MDL Judge followed Fed. R.
Civ. P. 55(b)(2) to determine the amount of damages.  (Doc. #65-
1, p. 30.)  The hearing "considered only remediation damages for
current owners."  (Id.)  "After considered analysis of the
impracticality and risks of the selective remediation approach,
the Court found in Germano and re-affirms herein that remediating
a Chinese drywall property requires complete remediation and
cleaning. . .."  (Id. at 14.)  The MDL Judge found that "proper
remediation of the danger posed by Chinese drywall must include
the removal of all drywall, all electrical wiring, the entire HVAC
system, and many other items such as appliances, carpet, cabinetry,

trim work and flooring." (Id. at 14-15.)  The MDL Judge further found that "a formulaic method used to calculate remediation damages is fair and reasonable," (Id. at 29) and adopted "Mr. Inglis' damages methodology to quantify the aggregate damages." (Id. at 49.)

Thus, this decision determined how damages were to be calculated for defaulted defendants.  Nothing in this decision addressed the Florida economic loss rule.  Nothing in the Court's current Opinion and Order changes that decision, and the methodology still applies when those damages are recoverable.  The law of the case doctrine does not apply here.

**(2)  Quality of Inspection and Helpfulness to Jury**

Defendants argue that the inspection and damage opinions are speculative and unreliable because the presence or extent of KPT drywall was not identified.  (Doc. #64, pp. 20-23.)  While it is not clear if any of Mr. Macomber's opinions survive the economic loss rule, the criticisms voiced in these sections of the motion go to the weight of the opinions, not their admissibility.  These arguments are therefore rejected as a basis to exclude testimony.

Accordingly, it is hereby

**ORDERED:**

Defendants' Motion to Exclude or Limit the Expert Testimony of Howard Ehrsam and Shawn Macomber (Doc. #64) is **GRANTED** as to Howard Ehrsam and **GRANTED** as to Shawn Macomber to the extent that

Mr. Macomber may not express opinions on any component of damages other than "other property" (if there is any in this case) as discussed above.

DONE and ORDERED at Fort Myers, Florida, this   28th   day of February 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record